# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| QUALITY CROUTONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 05 C 4928 |
| v. ) | |
| ) | Magistrate Judge Sidney Schenkier |
| GEORGE WESTON BAKERIES, INC., ) | |
| and ARNOLD FOODS CO., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This case arises out of a contract dispute between plaintiff Quality Croutons, Inc. ("Quality") and defendants George Weston Bakeries, Inc. and Arnold Foods Co. (collectively, "GWB"). On July 21, 2005, Quality brought this action against GWB in the Circuit Court of Cook County, alleging claims for breach of oral contract, promissory estoppel, breach of agreement to negotiate in good faith, and unjust enrichment. All these claims stem from the assertion that GWB breached an oral promise to purchase retail croutons from Quality for a three-year period. On August 6, 2005, GWB removed the case to this court on the basis of diversity jurisdiction.

On May 9, 2006, this Court considered Quality's motion to extend the time to complete oral discovery, in order to complete certain depositions identified in the motion. The Court granted the motion, and extended the time to complete oral discovery to July 17, 2006. Quality then noticed the depositions of eight additional witnesses not identified in Quality's motion for extension of time, including GWB's in-house attorneys Shelly Seligman and Jonathan Berger. This led to further motion practice: Quality moved to compel GWB to produce the additional witnesses for deposition,

and GWB moved to clarify the May 9 order to state that the extended period for oral discovery was limited to the specific depositions Quality had identified in the motion to extend oral discovery.

On June 21, 2006, the Court ruled on both motions. The Court granted GWB's motion to clarify, confirming that its May 9, 2006 order was not a general invitation to initiate (and expand) discovery but was intended to be limited to giving Quality the time needed to depose the witnesses identified in the motion to extend time. In line with that ruling, the Court denied in large part Quality's motion to compel, with three exceptions. *First*, the Court granted the motion insofar as it sought to compel GWB to produce a Rule 30(b)(6) witness on certain subjects. *Second*, the Court continued to defer (as it had in the May 9 order) the question of Quality's right to depose GWB's chief executive officer. *Third*, the Court denied without prejudice the motion to compel the depositions of Ms. Seligman and/or Mr. Berger, but set a schedule for the parties to brief more thoroughly the issue of whether they should be produced for deposition.

That issue has been briefed and is now before the Court (doc. # 54). Quality claims that the conduct of Berger and Seligman is relevant to its cause of action for breach of agreement to negotiate in good faith (Pl.'s Mem., at 1-2). Moreover, Quality asserts that GWB has made a blanket assertion of privilege and failed to show that all testimony for Berger and Seligman is protected by attorney-client privilege (*Id.*). GWB objects to the production of Berger and Seligman for depositions on two grounds: (1) that the deadline for fact discovery had expired when Quality noticed Berger and Seligman; and (2) that any testimony Berger and Seligman would give regarding Quality's claims is protected from disclosure by attorney-client privilege, and testimony on other issues would be both privileged and irrelevant (Def.'s Mem., at 6).

The first issue requires no extended discussion. Both Ms. Seligman and Mr. Berger had dealings with Quality. Those dealings – involving written and oral communications – clearly are not privileged. Thus, we see no reason why Ms. Seligman and Mr. Berger may not be deposed as to those dealings.

In Illinois, "[t]he attorney-client privilege protects only communications and is not a wholesale bar to a witness' accessibility." *Favala v. Cumberland Eng'g Co.*, 17 F.3d at 987, 990 (7th Cir. 1994) (citing *People v. Speck*, 242 N.E.2d 208, 221 (1968), *rev'd in part on other grounds*). Moreover, "challenges to the taking of an attorney's deposition, based upon claims that any of the attorney's testimony will involve disclosure of privileged information or 'work product,' have been held to be premature." *Hunt Int'l. Res. Corp. v. Binstein*, 98 F.R.D. 689, 690 (N.D.Ill. 1983) (citation omitted). In order to bar the deposition of in-house counsel altogether, we would have to make two assumptions. "First, we would have to assume that *everything* [Berger and Seligman] would testify to in [their] deposition[s] would be a matter subject to the attorney-client privilege. Second, we would have to assume further that [Berger and Seligman] in some instances would fail to invoke the attorney-client privilege when asked questions concerning privileged matters." *Id.* at 691. The Court finds no basis upon which to make such assumptions in this case.

We are aware that Ms. Seligman and Mr. Berger were not listed by Quality in the motion to extend discovery, and thus were not within the scope of discovery permitted by this Court's May 9 order. However, upon reviewing the submissions by the parties on this motion, we are persuaded that this shortcoming on the part of plaintiff's counsel should not deprive Quality of the opportunity to obtain discovery from these two persons at GWB who were involved in negotiations with Quality. Allowing these two depositions will not result in a general reopening of discovery and thus will not

3

unduly delay the case. Moreover, we do not see any prejudice to GWB from the timing of Qaulity's request to depose them, and thus we will resolve the issue on the merits and not on the timing ground agreed by GWB. For the reasons set forth below, we will permit the depositions of Ms. Seligman and Mr. Berger to proceed.

It is plain that Quality is not content to depose Ms. Seligman and Mr. Berger regarding their dealings with GWB. Rather, Quality seeks to depose these individuals on their internal communications with GWB on the grounds that those communications were not privileged in the first instance, and even if they were, that the privilege has been waived. In order to stave off (or at least to minimize) disputes that otherwise may arise during the depositions, we address those arguments below. Because subject matter jurisdiction is based on diversity of citizenship and the claims all arise under Illinois law, the claims of attorney-client privilege are also governed by Illinois law. See Fed. R. Evid. 501; *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 272 (N.D.Ill.2004).

I.

In Illinois, the "control-group test" is used to determine when attorney-client privilege applies in a corporate context. *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 432 N.E.2d 250, 257 (Ill.1982); *see also Dexia*, 231 F.R.D. at 276. Under this test, "the only communications that are ordinarily held privileged...are those made by top management who have the ability to make a final decision." *Consolidation Coal Co.* 432 N.E.2d at 257. The Illinois Supreme Court expanded this traditional definition to include "an employee whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority, is properly within the

control group. However, the individuals upon whom he may rely for supplying information are not members of the control group." *Id.* at 258.

The burden of establishing facts which give rise to attorney-client privilege rests upon the party asserting such privilege. *Consolidation Coal Co.*, 432 N.E.2d at 257; *Favala v. Cumberland Eng'g Co.*, 17 F.3d 987, 990 (7th Cir.1994). Specifically, "the claimant must show...that the communication originated in a confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential." *Consolidation Coal Co.*, 432 N.E.2d at 257 (citation omitted).

Illinois courts "adhere to a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit." *Waste Management Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 327 (Ill. 1991). However, we must consider this policy in light of the purpose of the attorney-client privilege to encourage "full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information." *Consolidation Coal Co.*, 432 N.E.2d at 256-57 (citation omitted).

In this motion, Quality claims that communications that Ms. Seligman and Mr. Berger shared with Elizabeth Thaler and David McNamara were not privileged *ab initio*, because Ms. Thaler and Mr. McNamara were not in the control group.[1] We disagree.

---

[1] Quality's reply argues that since GWB's response did not refute the assertion that Maureen Sticco (a senior production manager), Don Marquess (a vice president of marketing), John Marcoux (director of marketing), and Marty Schiraldi (whose title is not disclosed) were outside of GWB's control group, certain communications in which they took part are not privileged (Pl.'s Reply at 9). However, Quality's opening brief only mentioned those persons in passing in the statement of facts section (Pl.'s Mem. at 3). Quality's opening brief did not develop any argument as to why those persons fell outside the control group. The Seventh Circuit has made clear that "[a] reply brief is for replying not for raising essentially new matters that could have been advanced in the opening brief." *Hussein v. Oshkosh Motor Truck Company*, 816 F.2d 348, 360 (7th Cir.1987). Because Quality did not develop its control group argument with respect to Sticco, Marquess, Marcoux, and Schiraldi until the reply memorandum, we decline to address it. *Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004).

5

Ms. Thaler falls within GWB's control group as defined by *Consolidation Coal*. Although Ms. Thaler does not qualify as top management, the record supports the conclusion that Ms. Thaler, as logistics manager, "served as an advisor to top management and was 'consulted for the purpose of determining what legal action the corporation' would pursue" with respect to co-pack negotiations and contracts. *Trustmark Ins. Co. v. General & Cologne Life Re of Am.*, 2000 WL 1898518, at *5 (N.D.Ill. 2000). Thus, we reject the argument that communications with Ms. Thaler could not be privileged on the ground that she was outside the control group.

We reach the same conclusion as to communications Ms. Seligman and Mr. Berger shared with Mr. McNamara, who was a category manager. It appears that Mr. McNamara conducted analysis on market trends, which he presented to his superior, who in turn, used that analysis to inform business decisions made higher up the corporate hierarchy. If that were all that Mr. McNamara did, he would not fall within the control group. But, the Court has been presented with evidence Mr. McNamara did more: he also made recommendations as to what actions GWB should take (Def.'s Mem., Ex. C (Speaker Dep.) at 59-60, Ex. F (McNamara Dep.) at 156, 230). We conclude that this places Mr. McNamara within the control group.

Our finding that Ms. Thaler and Mr. McNamara were in the control group leads to the conclusion that communications between them and Ms. Seligman and/or Mr. Berger *may* be privileged; we draw no conclusion as to whether any particular communication *was* privileged. Not every communication between a lawyer and a client is automatically privileged. For example, the lawyer may be acting in a business other than in a legal capacity. Here, we do not know if Ms. Seligman's title "Vice President-General Counsel" reflects that she wears both a legal and business hat. And, a communication which a lawyer merely receives as a matter of routine, where no advice

is sought, is not privileged. *See, e.g., IBJ Whitehall Bank & Trust Co. v. Cory & Assocs., Inc.* 97 C 5827, 1999 WL 617842, *2 (N.D. Ill. Aug. 12, 1999). It will be for GWB to establish, as to any particular communication for which privilege is asserted during the deposition, that the privilege in fact applies. "Allow[ing an attorney's] deposition to be taken and permit[ting] the attorney to claim privilege in the face of certain questions, if necessary" is a "more appropriate method" than barring such depositions altogether. *Hunt*, 98 F.R.D. at 690. At this time, we resolve only the question of whether the privilege may apply based on the status of Ms. Thaler and Mr. McNamara in the control group.

## II.

Like other privileges, the attorney-client privilege can be waived. *Dexia Credit Local*, 231 F.R.D. at 273. Quality asserts there has been an "at issue" waiver stemming from GWB's denial that it breached the duty of good faith and fair dealing. Quality argues that to prove that defense, GWB will be forced to rely on the advice it received from Ms. Seligman and Mr. Berger (Pl.'s Mem. at 8). This argument misconceives the "at issue" waiver doctrine. As this Court previously has held under federal law, an at issue waiver "does not occur simply by the assertion of a claim or defense; rather, to waive the privilege, the party to whom the privilege belongs must affirmatively put at issue the specific communication, document, or information to which the privilege attaches." *Dexia Credit Local*, 231 F.R.D. at 275. This Court also has held that this same rule applies under Illinois law. *Id.* at 275-76. In this case, GWB has not used privileged communications or information in its

7

defense, nor does it intend to rely on an advice-of-counsel defense (Def.'s Mem., at 11-12). Thus, the Court finds that the at-issue waiver does not apply in this case.[2]

## CONCLUSION

For the foregoing reasons, Quality's motion to compel the depositions of Ms. Seligman and Mr. Berger (doc # 54) is granted. These depositions shall be completed by September 15, 2006. In all other respects, the August 17, 2006 deadline for completion of discovery remains in effect.

ENTER:

/s/ Sidney I. Schenkier

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: August 14, 2006

---

[2] Quality also argues that GWB waived the privilege by disclosure to persons outside the control group: specifically, Ms. Thaler and Mr. McNamara (Pl.'s Mem., at 7). Based on our finding that those persons were within the control group, we reject that waiver argument.

8