# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| QUALITY CROUTONS, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 05 CV 4928 |
| ) | Judge Blanche M. Manning |
| GEORGE WESTON BAKERIES, INC., and ) | |
| ARNOLD FOODS CO., ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Crouton connoisseurs are a finicky lot. For years they were content buying croutons packed in non-resealable packaging. But suddenly in 2003 they wanted their croutons only in resealable packaging. In their search for resealable packaging, they abandoned their former brands in droves, including the croutons packaged and sold by the parties to this case.

Plaintiff Quality Croutons, Inc. packaged croutons for sale by defendant Arnold Foods Co. (wholly owned by defendant George Weston Bakeries, Inc.) beginning in 2002. Arnold Foods' sale of croutons began faltering a year later, and so it asked Quality Croutons to switch over to resealable packaging. When Quality Croutons balked, Arnold Foods took its business elsewhere.

Quality Croutons sued Arnold Foods and George Weston Bakeries–which the court will refer to collectively as Arnold Foods—alleging breach of an oral contract, breach of the duty to negotiate a contract in good faith, promissory estoppel, and unjust enrichment. The gist of Quality Croutons' claims is that Arnold Foods had agreed to buy all of its output of croutons—at least 739,290 cases annually—for a minimum of three years, but failed to do so. The defendants have moved for summary judgment on all counts, and Quality Croutons filed a cross-motion for

summary judgment on its claim that the defendants failed to negotiate in good faith as well as a motion for leave to file revised supplemental statements of facts and exhibits. Quality Croutons' motion for leave is granted and, for the reasons that follow, Quality Croutons' motion for summary judgment is denied, while the defendants' motion is granted.

**BACKGROUND**

Quality Croutons has manufactured croutons[1] in Chicago since 1987. It packaged them in bulk for use primarily by restaurants such as McDonald's, Pizza Hut, Denny's and Wendy's. In 2001, it began selling its bulk-packaged croutons to Arnold Foods, which used to produce its own croutons but had started outsourcing the work to companies like Quality Croutons. The following year, Arnold Foods became interested in buying croutons in "bag-in-box" retail packaging from Quality Croutons for sale to consumers. Quality Croutons was interested but faced a significant obstacle—it did not own equipment capable of producing bag-in-box packaging. Arnold Foods offered a solution—it sold to Quality Croutons packaging equipment it no longer needed that was capable of packaging bag-in-box croutons.

---

[1] The word crouton is derived from the French word croûte, which means "crust." In traditional French cooking, a crouton is a slice of toasted or fried bread used with soup or as an hors d'ouvre base. *See* Prosper Montangé, *The Larousse Gastronomique* 327(1st ed. 1961); *see also* Julia Child, *Mastering the Art of French Cooking* 199-200 (1961) (defining a crouton as a plain or sauteed bread round used for canapes). Garnishing croutons, on the other hand, are diced or shaped pieces of bread used to finish hot sauced dishes, such as Blanquette de Veau or Skate Grenobloise.

As the joy of croutons spread from nation to nation, each culture adapted the French formulation to suit their own tastes. For instance, in Italy they evolved into crostini, fried or toasted bread rounds not to be confused with bruschetta, which derive their name from the Italian verb bruscare (to char over hot coals) and are always grilled. In the United States, croutons have taken the form of seasoned, toasted cubes of bread used primarily to garnish salads. It is the revolution in packaging of the American version of croutons upon which this order focuses.

To facilitate the equipment sale, the parties entered into a Contract of Sale of Used Equipment on March 26, 2003. Under the contract, Quality Croutons agreed to pay $607,000 plus 3% interest per year, payable in the form of a $0.1766 discount off the price of each of the first 3,696,200 cases of croutons that Arnold Foods purchased each year. The contract also provided that: "Nothing in the Agreement shall obligate [Arnold Foods] to purchase any Product from [Quality Croutons]." Response to Arnold Foods' Statements of Undisputed Facts, Docket # 107, Ex. 7, at 1. In the event that Arnold Foods stopped buying croutons from Quality Croutons, the contract provided that Quality Croutons would be required to repay the remainder of the purchase price with interest in monthly installments, to be paid in full by the five-year anniversary of the equipment sale.

Although not included in the equipment purchase contract, Quality Croutons president David Moore contends that he also obtained from Arnold Foods an oral promise to continue using bag-in-box packaging for at least three years, as opposed to switching to resealable packaging. Arnold Foods disputes that contention, pointing out that the equipment purchase contract specifically states that it does not obligate Arnold Foods to purchase *any* croutons.

With the new equipment and new leased facilities to house it, Quality Croutons began producing bag-in-box croutons for Arnold Foods in July 2003. The parties never entered into a written contract for Arnold Foods' purchases of croutons from Quality Croutons. However, on March 26, 2003, Ron Guttenberg, an executive with Arnold Foods, sent a letter agreement to David Moore of Quality Croutons. The letter agreement read as follows:

> This letter will confirm the interest of Arnold Foods Company, Inc. ("Arnold") to enter into a Co-Pack Agreement with Quality Croutons ("Quality"), expressly conditioned upon Arnold and Quality entering a written agreement, signed

> by both parties, containing the terms and conditions by which Quality will produce certain products for Arnold. It is Arnold's intention to include in any final contract that Quality will be the exclusive supplier of Arnold branded croutons to the extent of Arnold's orders and Quality Croutons' capacity to manufacture such product. Arnold will agree to a three year term for the Agreement.
>
> This Letter Agreement is signed with the express understanding and acknowledgment that except for the parties [sic] agreement to negotiate a contract in good faith to incorporate the terms herein, it is not based on any other agreement between the parties and nothing herein is intended to be binding or contractual nature or intended to impose any other obligations whatsoever.

Exhibits to Defendants' Statement of Undisputed Facts, Docket # 97, at Exhibit L. Although the parties exchanged several draft co-pack agreements, none were signed. In the absence of a written agreement, Arnold Foods submitted individual purchase orders for each shipment of croutons it bought.

The sale of croutons by Quality Croutons to Arnold Foods continued unremarkably until late 2003, when the low-carb diet craze drove Unilever—one of Arnold Foods' biggest customers—out of the crouton business. With the loss of Unilever's business, Arnold Foods' need for croutons dropped dramatically, as did its purchase orders to Quality Croutons. To help shield Quality Croutons from the financial impact of the loss of Unilever's business, Arnold Foods voluntarily increased the price it paid to Quality Croutons, shifted business from other suppliers to Quality Croutons, and forgave the entire $607,000 that Quality Croutons owed for the used packaging equipment.

Meanwhile, Arnold Foods researched the crouton market and discovered that more than half of the croutons sold were in resealable packaging rather than bag-in-box. It also discovered that while sales of bag-in-box croutons were dropping, the sale of croutons in resealable packaging was growing. Arnold Foods shared its research with Quality Croutons and, in August

2004, decided to switch to resealable packaging by the end of the year. But Quality Croutons determined that converting its equipment to produce resealable packaging would cost it more than $1 million, a cost it refused to shoulder alone. Upon learning that Quality Croutons would not convert to resealable packaging, on September 14, 2004, Arnold Foods notified Quality Croutons that its purchases would stop by December of 2004. In response, Quality Croutons immediately stopped producing croutons for Arnold Foods, and Arnold Foods began to obtain its croutons elsewhere.

Quality Croutons contends that it had a three-year contract through mid-2006 to provide all of the croutons Arnold Foods needed (a minimum of 739,290 cases a year) but that Arnold Foods breached that contract by terminating it prematurely in 2004. Specifically, in its complaint Quality Croutons alleges the following claims against Arnold Foods: (1) breach of an oral contract to buy a minimum of 739,290 cases of croutons from Quality Croutons each year for at least three years (Count I); (2) breach of an oral contract to purchase of all its croutons from Quality Croutons for at least three years (Count II); (3) promissory estoppel based upon Arnold Foods' alleged promise to buy a minimum of 739,290 cases of croutons from Quality Croutons each year for at least three years (Count III); (4) promissory estoppel based upon Arnold Foods' alleged promise to purchase all of its croutons from Quality Croutons for at least three years (Count IV); (5) promissory estoppel based upon an alleged promise not to switch from bag in box packaging for at least three years (Count V); (6) breach of the terms of the letter agreement, specifically, the duty to negotiate a supply contract in good faith (Count VI); and (7) unjust enrichment (Count VII).

The parties have filed cross-motions for summary judgment. Arnold Foods seeks

summary judgment on all seven counts of Quality Croutons' complaint. Quality Croutons, in turn, seeks summary judgment on Count VI, that Arnold Foods failed to negotiate a supply contract with it in good faith.

## ANALYSIS

**I.      Summary Judgment Standard**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir.1992). The nonmoving party, however, may not merely rest upon the allegations or details in his pleadings, but instead, must set forth specific facts showing that there is a genuine issue for trial. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**II.     Breach of Oral Contract (Count I) and Promissory Estoppel (Count II) Based Upon An Alleged Commitment to Purchase 739,290 Cases of Croutons Annually**

At the outset, the court notes that Quality Croutons has abandoned its contention that Arnold Foods committed to purchasing at least 739,290 cases of croutons annually. Specifically, it does not argue in its response to Arnold Foods' motion for summary judgment that Arnold Foods ever made such a commitment, and in response to Arnold Foods' Rule 56.1 statements of undisputed facts, it agrees that Arnold Foods never made such a commitment. *See* Response to Statement of Undisputed Facts, Docket # 107, ¶ 40 ("Defendants never agreed to a minimum purchase requirement of 739,290 cases (or any minimum) per year. . . . Response: Agreed.")

Because it is undisputed that Arnold Foods never agreed to purchase 739,290 cases of

croutons per year, the defendants are entitled to summary judgment on Counts I and III, which are based upon such a commitment.

### III. Breach of Oral Requirements Contract to Purchase Croutons for Three Years (Count II)

The defendants seek summary judgment on Quality Croutons' claim that Arnold Foods agreed to purchase all of its requirements for croutons exclusively from Quality Croutons for at least three years. The agreement was allegedly reached in November 2002, when representatives from Quality Croutons traveled to Greenwich, Connecticut to meet with the defendants. Arnold Foods contends that any such agreement is unenforceable because it is not in writing.

Although the contract was allegedly consummated in Connecticut, the parties appear to agree that Illinois law governs because it is the only state law they cite. Accordingly, that is the law the court will apply.

Under Illinois' statute of frauds, contracts that cannot be completed within one year must be in writing. *See* 740 Ill. Comp. Stat. 80/1. Additionally, under Illinois' version of the Uniform Commercial Code, a contract for the sale of goods for the price of $500 or more must also be in writing. *See* 810 Ill. Comp. Stat. 5/2-201. Both statutes would appear to be impediments to Quality Croutons' ability to enforce the alleged contract because (1) a three-year contract cannot be completed within one year, and (2) it is undisputed that the alleged supply contract involved the sale of more than $500 of croutons. However, even if an agreement is not embodied in a single written document, the requirements of both the statute of frauds and the UCC may be satisfied with separate writings that, collectively, evidence the parties' agreement, as long as the writings are signed by the party disavowing the contract. *See JamSports & Entertainment, LLC*

*v. Paradama Prods., Inc.*, 336 F. Supp. 2d 824, 850 (N.D. Ill. 2004). Collectively, the writings must contain each of the agreement's essential terms. *See Wilkes v. AccuStaff, Inc.*, 42 F. Supp. 2d . 842, 844-45 (N.D. Ill. 1999).

Quality Croutons identifies three documents that it contends memorializes its oral agreement with the defendants.

### A. March 26, 2003 Letter Agreement

First, it relies on the letter agreement signed by Ron Guttenberg in support of its assertion that the parties agreed to a three-year supply contract. Specifically, the letter states that "Arnold [Foods] will agree to a three year term for the Agreement." Exhibits to Defendants' Statement of Undisputed Facts, Docket # 97, at Exhibit L. However, the same letter agreement also states that "nothing herein is intended to be binding or contractual [in] nature or intended to impose any other obligations whatsoever" and that it is "expressly conditioned upon Arnold and Quality entering a written agreement, signed by both parties." *Id.*

Under Illinois law, the intent of the parties to a letter agreement determines whether any of the terms proposed in the letter agreement are enforceable. *See Magnus v. Lutheran General Health Care Sys.*, 601 N.E.2d 907, 913 (Ill. App. Ct. 1992). Intent is an objective inquiry when it is expressed in the letter agreement itself. *See Venture Assocs. v. Zenith Data Corp.*, 987 F.2d 429, 432 (7th Cir. 1993) (applying Illinois law). When the parties express in the letter agreement that its terms are not binding, or that any final agreement is conditioned upon some future event that has not yet occurred, then the parties have expressed an intent not to be bound by the letter agreement. *See id.*; *Magnus*, 601 N.E.2d at 913.

In the March 26, 2003, letter agreement, the parties expressed their intent that "any final

contract" was "conditioned upon Arnold and Quality entering a written agreement, signed by both parties." Furthermore, the letter agreement concluded that "nothing herein is intended to be binding or contractual [in] nature or intended to impose any other obligations whatsoever." As a result, the letter agreement itself evidences the parties' intent that the agreement was not binding. Because the terms expressed in the agreement are not binding, the letter cannot serve as written evidence that Arnold Foods intended to be bound to a three-year agreement with Quality Croutons. Accordingly, the letter agreement does not satisfy the requirements of the Statutes of Frauds or the UCC.

### B. October 21, 2003 Memorandum

Quality Croutons also points to an October 21, 2003, memorandum it received from Elizabeth Thaler, Arnold Foods' logistics manager, as written confirmation of the parties' alleged agreement, in satisfaction of the requirements of Illinois' statute of frauds and the UCC. The pertinent portion of the memorandum read as follows:

> As of July 1, 2003 Quality Croutons became GWB's supplier for the items listed below:
> Arnold Croutons: 2.5 M
> BBO Croutons-Unilever: 5.5M
> Private Label- Unilever: 1 M
> Total:  10 M

Quality Croutons' Revised Supplemental Statements, Docket #111, Exhibit 7 at 1. According to Quality Croutons, the memorandum evidences that: (1) Quality Croutons was Arnold Foods' exclusive supplier of all of its needs for croutons; and (2) that Arnold Foods agreed to purchase at least 9 M of croutons each year, which Quality Croutons equates to 750,000 cases annually. Quality Croutons' Response, Docket # 108, at 5 n.5.

Quality Croutons quotes the October 21, 2003, memorandum as referring to Quality

Croutons as "GWB's exclusive supplier." *See* Quality Croutons' Revised Supplemental Statements, Docket #111, ¶ 16. The defendants agree that Quality Croutons' quote is accurate. Defendants' Response to Quality Croutons' Supplemental Statements, Docket #100, ¶ 16. So the court was surprised to discover during its review of the record that the memorandum never describes the defendants as Quality Croutons' "exclusive" supplier—the word "exclusive" has been inaccurately quoted. The memorandum also never mentions a three-year commitment by Arnold Foods to buy croutons from Quality Croutons. As a result, the memorandum provides no support for Quality Crouton's claim that Arnold Foods agreed to satisfy its need for croutons from Quality Croutons for at least three years.

Quality Croutons also argues that the memorandum evidences Arnold Foods' commitment to purchase a minimum quantity of 750,000 units of croutons from it each year. But that would be relevant only to Quality Croutons' claims in Counts I and III that are based upon an alleged minimum quantity commitment, claims that Quality Croutons has abandoned. Accordingly, the argument will not be addressed further because it is moot.

### C. Written Pricing Models

Next, Quality Croutons argues that Arnold Foods' annual production records from when it used to produce its own croutons somehow memorialize Arnold Foods' alleged commitment to buy all of its requirements for croutons from Quality Croutons for three years. But Arnold Foods' records of the number of croutons it used to produce before outsourcing the work would not show either that (1) it intended to purchase similar quantities from Quality Croutons exclusively, or (2) it committed to purchase croutons from Quality Croutons for three years. These production records could therefore not serve as a writing in satisfaction of the Statute of

frauds or the UCC. Furthermore, Quality Croutons has forfeited any argument it may have based upon the production records by not citing them or including them as exhibits, relying instead on the deposition testimony of Ron Guttenberg, who testified merely that "we had annual production records." Quality Croutons' Supplemental Statements, Docket #111, Exhibit 2 at 30, lines 15-21. *See also Pourghoraishi v. Flying J Inc.*, 449 F.3d 751, 754 n.1 (7th Cir. 2006) (courts will not hunt through the record to piece together arguments and evidence in support of a party's case).

D. **Used Equipment Contract**

Quality Croutons did not identify its contract to purchase used packaging equipment from Arnold Foods as a document that satisfies the statute of frauds and UCC, but for the sake of completeness the court will briefly address the issue. Under its terms, the contract required Quality Croutons to pay for the equipment by offering Arnold Foods a discount of $0.1766 off the price of each of the first 3,696,200 cases of croutons that Arnold Foods purchased each year. But any argument that the contract required Arnold Foods to continue buying croutons long enough to allow Quality Croutons to pay off the equipment would be unavailing: the contract also specifically stated that "Nothing in the Agreement shall obligate [Arnold Foods] to purchase *any* Product from [Quality Croutons]." Response to Arnold Foods' Statements of Undisputed Facts, Docket # 107, Ex. 7, at 1 (emphasis added). Accordingly, the used equipment contract does not satisfy the requirements of Illinois' statute of frauds or the UCC.

Because none of the writings identified by Quality Croutons memorializes in writing an agreement by Arnold Foods to buy all of its croutons from Quality Croutons for three years, it cannot satisfy the requirements of the statute of frauds or the UCC. Accordingly, Arnold Foods

is entitled to summary judgment on Count II.

IV.     **Promissory Estoppel Based Upon Alleged Promise By Arnold Foods To Purchase All Of Its Requirements For Croutons From Quality Croutons for Three Years (Count IV)**

Next, Arnold Foods seeks summary judgment on Count IV, in which Quality Croutons alleged a claim of promissory estoppel based upon an alleged promise by Arnold Foods to buy all of its croutons from Quality Croutons for three years.

The doctrine of promissory estoppel does not offer a party who cannot prove a breach of contract a "second bite at the apple." *Dumas v. Infinity Broadcasting Corp.*, 416 F.3d 671, 677 (7th Cir. 2005). To that end, under Illinois law a promise claimed to be enforceable under the doctrine of promissory estoppel must also comply with the requirements of the statute of frauds. *See Trustmark Ins. Co. v. General & Cologne Life Re of Am.*, 424 F.3d 542, 549 (7th Cir. 2005); *McInerney v. Charter Golf, Inc.*, 176 Ill.2d 482, 223 Ill.Dec. 911, 680 N.E.2d 1347, 1352 (1997) ("[P]romissory estoppel does not bar the application of the statute of frauds in Illinois."). Because a promise to purchase croutons for no less than three years cannot be completed in one year, Quality Croutons may avoid summary judgment only by identifying a writing sufficient to satisfy the statute of frauds. *See Trustmark*, 424 F.3d at 549.

Quality Croutons has identified no writing that satisfies the statute of frauds. As detailed in the previous section, the only writings signed by Arnold Foods either (1) expressly state that the writing creates no obligations between the parties, or (2) do not discuss a three-year obligation to purchase croutons at all. Accordingly, Arnold Foods is also entitled to summary judgment on Count IV.

## V. Promissory Estoppel Based Upon Alleged Promise to Continue Using Bag-In-Box Packaging for a Minimum of Three Years (Count V)

Quality Croutons' claim in Count V based upon an oral promise to continue using bag-in-box packaging for three years is also subject to the statute of frauds. But Quality Croutons has identified no writing to support the three-year term of the alleged promise, and therefore Arnold Foods is entitled to summary judgment on Count V as well. *See Trustmark*, 424 F.3d at 549 (under Illinois law, promissory estoppel claims are subject to the statute of frauds).

## VI. Obligation to Negotiate in Good Faith (Count VI)

In Count VI, Quality Croutons alleges that Arnold Foods breached the duty to negotiate in good faith that is contained in the parties' letter agreement dated March 26, 2003. Arnold Foods concedes that it was obligated to negotiate in good faith, but contends that it fulfilled its obligation. Both Quality Foods and Arnold Foods have moved for summary judgment in their favor on this claim.

As discussed in further detail above, the intent of the parties to a letter agreement determines what if any part of it is enforceable. *See Magnus*, 601 N.E.2d at 913. Intent is an objective inquiry when it is expressed in the letter agreement itself. *See Venture*, 987 F.2d at 432. When the parties express in the letter agreement that its terms are not binding, or that any final agreement is conditioned upon some future event that has not yet occurred, then the parties have expressed an intent not to be bound by the letter agreement. *See id.*; *Magnus*, 601 N.E.2d at 913. The parties agree that the letter agreement creates the obligation to negotiate a contract in good faith. They disagree over whether the agreement requires anything more.

Quality Croutons contends that the letter agreement not only obligated Arnold Foods to

negotiate in good faith, but also "fixed two terms, i.e., three years and exclusive production." Quality Croutons argues that because the three-year and exclusivity terms were "fixed," Arnold Foods breached its duty to negotiate in good faith by failing to include those terms in the draft co-pack agreements it exchanged with Quality Croutons. In support, it cites *Milex Prods., Inc. v. Alra Labs., Inc.*, 603 N.E.2d 1226, 1234 (Ill. Appt. Ct. 1992), which held that the duty to negotiate in good faith prevents one party from "insisting on conditions that do not conform to the preliminary agreement."

However, *Milex* is inapposite. *Milex* explicitly distinguished the agreement in that case from ones that state on their face that they are not binding, such as the one in *Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1223 (7th Cir. 1988) (examining a letter agreement that stated "this is not a binding agreement"). *Milex*, 603 N.E.2d at 1234. As detailed earlier, the letter agreement from Arnold Foods to Quality Croutons concluded that "nothing herein is intended to be binding or contractual [in] nature or intended to impose any other obligations whatsoever." Exhibits to Defendants' Statement of Undisputed Facts, Docket # 97, at Exhibit L. The language is virtually indistinguishable from the language used in the agreement in *Feldman*. *See Feldman*, 850 F.2d at 1223. Accordingly, because the parties explicitly expressed in the letter agreement that the only obligation it created was the duty to negotiate in good faith, the parties were under no obligation to include in their final contract the three-year and exclusivity terms in the letter agreement. *Id.*

Quality Croutons has not offered any evidence or argument identifying any other way in which Arnold Foods breached the duty to negotiate a contract in good faith. Accordingly, Arnold Foods is entitled to summary judgment on Count VI, while Quality Croutons' motion for

summary judgment on Count VI is denied.

## VII. Unjust Enrichment (Count VII)

In Count VII, Quality Croutons alleges that Arnold Foods was unjustly enriched when it stopped buying croutons from it before the end of their alleged three-year agreement. Specifically, Quality Croutons alleges that it would be unjust to allow Arnold Foods to retain the benefit of the sale of its used packaging equipment to Quality Croutons even though Arnold Foods did not fulfill its alleged promise to purchase croutons from Quality Croutons exclusively for three years.

Arnold Foods is entitled to summary judgment on Count VII for two reasons. First, Quality Croutons sets out absolutely no argument in opposition to Arnold Foods' motion for summary judgment on the claim. *See Lorillard Tobacco Co., Inc. v. A & E Oil Corp., Inc.*, 503 F.3d 588, 593 (7th Cir. 2007) (contentions not raised in opposition to motion for summary judgment are forfeited). Second, the claim is meritless. It is undisputed that the equipment purchase contract did not require Arnold Foods to purchase any quantity of croutons, let alone its entire requirement of croutons for three years. Therefore, this is not a case where Quality Croutons fully performed but Arnold Foods did not—Arnold Foods had no obligation except to provide the equipment to Quality Foods, which it did. Whatever incidental value Arnold Foods received as a result of Quality Croutons' removal of the equipment (i.e., the cost it saved by not having to pay a scrapper to remove the equipment) was eclipsed by the undisputed fact that it ultimately forgave the entire purchase price.

Accordingly, Arnold Foods is entitled to summary judgment on Count VII.

## CONCLUSION

For the reasons stated, Quality Croutons' motion for leave to file revised supplemental statements of facts and exhibits [111-1] is granted, its motion for summary judgment [104-1] is denied, and Arnold Foods' motion for summary judgment [94-1] is granted. The clerk is directed to terminate this case from the court's docket.

ENTER:

DATE: February 12, 2008

*Blanche M. Manning*
Blanche M. Manning
United States District Judge